Martin V. **PENDERGRASS**, Petitioner-Appellee,

v.

W. S. **NEIL**, Warden, Respondent-Appellant.

Helen Jones **RECOR**, Petitioner-Appellee,

v.

Martha K. **LINDER**, Warden, Respondent-Appellant.

Nos. 71–1458, 71–1705.

United States Court of Appeals,
Sixth Circuit.

Feb. 29, 1972.

R. Jackson Rose, Nashville, Tenn., for appellant W. S. Neil.

Bart Durham, III, Nashville, Tenn., for appellant Martha K. Linder; David M. Pack, Atty. Gen. of Tennessee, Nashville, Tenn., of counsel.

John W. Wagster, Nashville, Tenn., for appellees Martin V. Pendergrass and Helen J. Recor.

Before EDWARDS, PECK and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

These appeals concern cases wherein the United States District Court for the Middle District of Tennessee (Nashville Division) has granted petitions for writs of habeas corpus on the basis of the United States Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The District Court's orders require the state in each case to retry appellants promptly or to set them free.

The Supreme Court in North Carolina v. Pearce, *supra*, affirmed the issuance of federal writs of habeas corpus because the sentencing judges at the second trials of defendants whose first trials had been reversed on appeal administered higher sentences than had been entered at the first trials. This led to the possibility that such an exercise of judicial power was inspired by vindictiveness because the defendant had exercised his right to appeal. The Supreme Court said:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more

severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." North Carolina v. Pearce, *supra* at 725–726, 89 S.Ct. at 2080 (Footnote omitted.)

In the instant appeals, however, the state of Tennessee points out that its criminal statutes provide for sentencing by juries and argues that this fact makes the rationale of North Carolina v. Pearce, *supra*, inapplicable.

Pendergrass v. Neil—The essential facts in this case are:

It was stipulated by the parties that Pendergrass was convicted of involuntary manslaughter and sentenced to eleven months and twenty-nine days in the county workhouse following an automobile collision in 1965 in which a person was killed. It was also stipulated that upon Pendergrass' retrial in 1968 he was again convicted of involuntary manslaughter and sentenced to one year in the state penitentiary. The respondent warden further admits there was no evidence introduced at Pendergrass' trial reflecting on his conduct between his first trial and second trial.

Recor v. Linder—The agreed facts in this case follow:

The petitioner, Mrs. Recor, together with her husband, was charged with the first degree murder of their babysitter, a young girl who lived near their home in Chattanooga.

The first trial by jury resulted in a conviction of Mrs. Recor for second degree murder and a sentence of ten years. The Tennessee appellate courts reversed. The second trial likewise resulted in her conviction and this time her sentence was ten to fifteen years.

Two questions are presented: 1) Does the limitation on retrial, as set forth in North Carolina v. Pearce, *supra*, to the sentence established at the first trial apply to jury sentencing as well as to sentencing by judges?

2) If so, does North Carolina v. Pearce, *supra*, require retrial as ordered by the District Judge, or will an order for modification of sentence within constitutional limitations suffice?

We believe that the principles enunciated in North Carolina v. Pearce, *supra*, do apply to jury sentencing and hence affirm the issuance of writs of habeas corpus by the District Judge.

As to the question pertaining to remedy, we believe that Tennessee should have the opportunity to resentence within the rule set forth in North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 decided Dec. 14, 1971, well after the District Judge's opinion in these cases.

Sentencing in felony cases in Tennessee is by state statute entirely a jury function. T.C.A. §§ 40–2707, 40–2310 (1955).

Therefore, the state argues that in any case where a conviction has been reversed on appeal, the fact of such reversal will be unknown to the jury (as could not be true in relation to the judge) and hence the possibility of punishment of the defendant on retrial and conviction by administration of a longer sentence than he received the first time will not exist.

We are, however, by no means as certain as the state that juries will be unaware that they are hearing a retrial. In most instances the contrast between the date of the criminal events and the date of retrial will be such as to arouse speculation. In many cases on retrial there is likely to be use of the first trial record for impeachment purposes on cross-examination of witnesses. And in cases of some public notoriety, particu-

larly where they are tried in rural counties, it may be exceedingly difficult to secure juries whose members are actually uninformed about the fact that they are sitting on a second trial. If the jury does possess such knowledge, we think the possibility of its punishing the defendant for putting the state to the expense of another trial (when they have just redetermined his guilt) is a close parallel to that existing in relation to the trial judge.

Without speculating about whether this possibility could be satisfactorily controlled by voir dire examination of potential jurors, we place primary reliance for our decision upon other grounds. Plainly, if juries are free to administer longer or more severe sentences on retrials, any defendant would be foolish to fail to take this fact into account in determining whether or not to appeal. The right to appeal cannot constitutionally be fettered by such a threat any more than the constitutional right to a jury trial can be.[1] *See* United States v. Jackson, 390 U.S. 570, 88 S. Ct. 1209, 20 L.Ed.2d 138 (1968).

In *Jackson* the Court said:

"Our problem is to decide whether the *Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." United States v. Jackson, *supra* at 581, 88 S.Ct. at 1216. (Footnote omitted.)

The District Judge in this case stated the rationale of his decision effectively:

"It is made clear, both by the explicit language of *Pearce* and by the obvious policy considerations which constitute its *ratio decidendi,* that the Pearce decision is concerned with the assuagement of the *fear* of possible vindictiveness—*regardless* of whether such fear is in fact warranted by actual resentencing practices in a given jurisdiction. It is obvious that the possibility of incurring a longer sentence on retrial, either as a result of vindictive resentencing practices or merely as the result of happenstance, exerts a chilling effect upon a defendant's inclination to embark upon whatever appellate routes may ostensibly be 'open' to him. The existence of such a possibility places an unjustly-convicted defendant in the anomalous and unfair predicament of having to run the risk of a harsher sentence merely to obtain that to which he was constitutionally entitled in the beginning—*viz.,* a fair and error-free trial. It is thus manifest that the broad principles of due process which underlie the *Pearce* decision apply as forcefully to resentencing by a jury as they do to resentencing by a judge." (Emphasis in original.)

In another Tennessee case upon which the District Judge in these cases relied, then District Judge (now Circuit Judge) Miller added another reason, with which we agree, for holding North Carolina v. Pearce, *supra,* applicable:

"The Supreme Court was emphatic in *Pearce* that any increased sentence imposed upon a retrial must come 'in the light of *events subsequent to the first trial* that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." ' *Supra* [395 U.S.], at 723, 89 S.Ct. at 2079, citation omitted, emphasis added." Pin-

---

1. We note that the Fourth Circuit has also concluded that the rule of North Carolina v. Pearce applies to jury sentencing.

Levine v. Peyton, 444 F.2d 525 (4th Cir. 1971). But *cf.* Johnson v. Commonwealth, Va., 186 S.E.2d 53 (1972).

kard v. Neil, 311 F.Supp. 711, 714 (M.D.Tenn.1970).

We do not think that North Carolina v. Pearce, *supra*, allows for a more severe sentence because the evidence at retrial is arguably clearer or more lurid.

The problem of post-first trial conduct on the part of a defendant subsequently again found guilty which concerned the Supreme Court in Pearce, *supra*, 395 U. S. at 726, 89 S.Ct. 2072, could, as far as federal standards are concerned, be handled by bifurcating the jury trial. This could be done by instructing the jury first to reach a decision on guilt, and then to provide for presentation of evidence on conduct (subsequent to the first trial) deemed to require more severe sentencing.

As to the second question pertaining to remedy, the Supreme Court has spoken authoritatively on this subject since the District Court consideration of these cases. In North Carolina v. Rice, *supra*, it has made clear that North Carolina v. Pearce does not demand retrials where procedures for resentencing are available to limit the sentence to that administered at the first trial. Such a limitation could, of course, be given as an instruction to the jury before submission of the case. *See* Pinkard v. Neil, 311 F.Supp. 711, 714 (M.D.Tenn.1970).

Here, however, we deal with cases where no such instruction was given and we are told that Tennessee law forbids the trial judge to resentence presumably even to comply with a federal habeas corpus order. *See* T.C.A. § 40–2310 (1955); *but cf.* Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900 (1944).

Following the reasoning of North Carolina v. Rice, *supra,* we modify the District Judge's orders in these cases to add the word "resentence" to the alternatives available to Tennessee. We will not speculate as to whether this can appropriately be accomplished by state judicial decision or would require legislative action. In either event, in the unusual posture of these cases (and with bonds continuing until resentence or retrial), we believe the state should be given six months to decide whether (and how) to provide a mechanism for resentencing or to endure the needless expense of retrials or the public hazard of release.

The judgments of the District Court are affirmed as modified above.